**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3115-24

JAZZELL HOLMES, by assignee,
MMU, LLC,

      Plaintiff-Respondent,

v.

MARY CANTEY,

      Defendant.

_____

DRAZIN & WARSHAW, PC,

      Appellant.

_____

      Submitted January 22, 2026 – Decided July 21, 2026

      Before Judges Gummer and Vanek.

      On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0417-15.

      Drazin & Warshaw, PC, self-represented appellant (Christopher R. Brown, on the brief).

      Ragan & Ragan, PC, attorneys for respondent MMU, LLC (W. Peter Ragan, Sr., on the brief).

PER CURIAM

This appeal arises from a dispute between a law firm and a judgment assignee regarding the firm's motion to enter an attorney's lien pursuant to the Attorney's Lien Act (the Act), N.J.S.A. 2A:13-5. Drazin & Warshaw, PC (Drazin) represented plaintiff Jazzell Holmes under a contingent-fee agreement and obtained a judgment that was not collected in full and was later assigned to MMU, LLC (MMU). Drazin appeals an order denying its motion to enter an attorney's lien. The trial court found, among other things, Drazin had failed to comply with certain procedural requirements. We agree and affirm.

I.

Pursuant to a June 23, 2014 agreement, plaintiff retained Drazin to represent her in connection with her claim she had suffered injuries in a 2013 fall. The agreement provided that, in the event of a recovery that exceeded costs, she would pay Drazin "a percentage of the net recovery." The agreement defined "net recovery" as "the total recovered on [her] behalf, minus [her] costs and expenses (including costs and expenses paid for [her] by [Drazin] . . . ), and minus any interest included in a judgment pursuant to R. 4:42-11(B)."

Drazin filed a complaint on plaintiff's behalf against defendant Mary Cantey, claiming plaintiff had been injured when she fell at defendant's

negligently-maintained premises. Following entry of default and a proof hearing, the court entered a May 27, 2016 judgment against defendant for $125,000, plus $3,657.05 in prejudgment interest and $200 in costs.

Drazin undertook efforts to collect on the judgment, recovering some but not all of the judgment amount. In a March 21, 2025 email, an attorney from the law firm Ragan & Ragan PC (Ragan), advised Drazin plaintiff had assigned the judgment to his client MMU. He provided copies of the filed assignment of judgment and his appearance of counsel for plaintiff's assignee. He directed Drazin to "take no further action on behalf of the former judgment holder against the judgment debtor."

In a March 25, 2025 letter, Drazin advised Ragan the outstanding principal balance of the judgment was $64,785.86 and the total amount due was $68,805.28 with interest, which was "accumulating at the rate of $13.31 per day." Referencing the retainer agreement, Drazin stated it was entitled to "a contingency fee of one-third of the judgment" and "one-third of the post judgment interest." Drazin asserted "N.J.S.A. 2A:13-5 set[] forth a statutory lien for [its] fee" and demanded "payment of [its] fees before any distribution of the proceeds to the judgment creditor."

A-3115-24

On April 7, 2025, Drazin moved for entry of an attorney lien pursuant to the Act. The notice of motion was addressed to Ragan as "[a]ttorneys for [p]laintiff's [a]ssignee, MMU." Drazin submitted in support of the motion a certification of one of its attorneys, detailing the procedural history of the case and his communication with plaintiff and Ragan. The attorney stated he had spoken with plaintiff about his communication with Ragan and the assignment of the judgment but did not indicate they had discussed Drazin's fee. Drazin provided a form of order directing it had "a lien against one-third of the proceeds of the . . . judgment" and that its lien "be paid before any other distribution of such proceeds as may be collected by the assignee or subsequent assignees."

After hearing argument on May 23, 2025, the court entered an order and placed a decision on the record denying the motion without prejudice. The court found the application was deficient, in part because Drazin had failed to satisfy certain procedural requirements. This appeal followed.

II.

An attorney's "charging lien 'is a judicial device'" governed by the Act. Schepisi & McLaughlin, P.A. v. LoFaro, 430 N.J. Super. 347, 355 (App. Div. 2013) (quoting Republic Factors, Inc. v. Carteret Work Uniforms, 24 N.J. 525, 534 (1957)). The Act creates "only an inchoate right," Sauro v. Sauro, 425 N.J.

Super. 555, 574 (App. Div. 2012), meaning "a right in the attorney to a lien on any judgment recovered for the attorney's client," id. at 575 (quoting Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens, 292 N.J. Super. 453, 460 (App. Div. 1996)). "[T]he assertion of the lien is 'only a claim of right to ask for the intervention of the court' for the attorney's 'protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs.'" Ippolito v. Ippolito, 465 N.J. Super. 428, 433 (App. Div. 2020) (quoting Republic Factors, 24 N.J. at 534).

The Act's "reach, however, is not unlimited." Musikoff v. Jay Parrino's The Mint, L.L.C., 172 N.J. 133, 139 (2002). The Act, "by its very terms," is inapplicable if "the client 'recovered nothing to which [an] attorney's lien could attach.'" Ippolito, 465 N.J. Super. at 432 (alteration in original) (quoting Wheeler v. Wheeler, 52 N.J. Super. 504, 508 (App. Div. 1958)). The Act "allows for the attachment of an attorney's lien only on 'a verdict, report, decision, award, judgment or final order in [the] client's favor.'" Ibid. (quoting N.J.S.A. 2A:13-5). Therefore, "[a] petition for an attorney's fee lien may be filed either before or after entry of the judgment in the underlying action." Levine v. Levine, 381 N.J. Super. 1, 9 (App. Div. 2005). However, an attorney's lien may not "be asserted for post-judgment legal services." Musikoff, 172 N.J.

5

at 139 (quoting Panarello v. Panarello, 245 N.J. Super. 318, 322 (Ch. Div. 1990)).

Although a motion under N.J.S.A. 2A:13-5 "may be brought as a step in the main cause," it must be "tried as a separate and distinct plenary action." Mateo v. Mateo, 281 N.J. Super. 73, 79 (App. Div. 1995). The determination and enforcement of the lien under the Act may not be resolved "in a summary fashion." Martin v. Martin, 335 N.J. Super. 212, 222 (App. Div. 2000). Therefore, "simply moving for an attorney's lien pursuant to N.J.S.A. 2A:13-5, as distinguished from filing a complaint demanding a fee, is not the proper way to establish an attorney's lien." Id. at 223.

"To protect the client, the lien must be instituted according to the procedure set forth in [H. & H.] Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347, 353 . . . ([App. Div.] 1959)." Sauro, 425 N.J. Super. at 574. The governing framework provides, in relevant part:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon

6

which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor[e] has been made, R[ule] 4:39-1 et seq., or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.

[H. & H., 54 N.J. Super. at 353-54.]

"This procedure must be considered in light of Rule 1:20A-6." Schepisi, 430 N.J. Super. at 357; see also Musikoff, 172 N.J. at 139 (finding the Act shall "be viewed in concert with the applicable Rules of Court"). Rule 1:20A-6 "applies to a petition to establish an attorney's lien as well as to a complaint for attorney's fees." Schepisi, 430 N.J. Super. at 357. Under that rule, an attorney must provide a client with written "[p]re-[a]ction [n]otice" at least thirty days before filing a lawsuit to recover legal fees. R. 1:20A-6; see also Schepisi, 430 N.J. Super. at 356-57. The notice must be sent by certified mail and regular mail or hand-delivered to the client and specifically advise the client of the right to request fee arbitration, the procedures for exercising that right, and the consequences of failing to do so, including the risk of waiver. R. 1:20A-6; see also Kopec v. Moers, 470 N.J. Super. 133, 163 (App. Div. 2022) (finding "the

7

plain language of <u>Rule</u> 1:20A-6 makes clear that it is the client who has the right to initiate fee arbitration proceedings . . . [it] 'is a matter within the exclusive control of the client'" (quoting Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 1:20A-6 (2022))). The failure to give pre-action notice prior to moving for an attorney's lien requires dismissal of the motion. <u>See Cole</u>, 292 N.J. Super. at 459.

However, an attorney's lien "is not mechanically imposed upon a mere showing of procedural compliance." <u>Sauro</u>, 425 N.J. Super. at 574. The "Act is 'rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts.'" <u>Lucas v. 1 on 1 Title Agency, Inc.</u>, 460 N.J. Super. 532, 540 (App. Div. 2019) (quoting <u>Levine</u>, 381 N.J. Super. at 9). The Act "is intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." <u>Ibid.</u> (quoting <u>Levine</u>, 381 N.J. Super. at 9) (internal quotation marks omitted). Any allocation of assets among attorneys who have otherwise established entitlement to a charging lien "must be done as equitably as possible." <u>Martin</u>, 335 N.J. Super. at 225.

The record is devoid of evidence Drazin provided the pre-action notice required by <u>Rule</u> 1:20A-6. The pre-action notice is designed to afford the client the opportunity to pursue fee arbitration before judicial intervention. <u>Schepisi</u>,

430 N.J. Super. at 357. Failure to comply with that requirement warrants dismissal of the motion. Cole, 292 N.J. Super. at 459. Additionally, Drazin did not follow the procedure set forth in H. &H., which requires a lien claim to proceed as a plenary action rather than summarily. 54 N.J. Super. at 353-54.

The trial court appropriately denied the motion due to its procedural infirmities. Accordingly, we affirm the May 23, 2025 order. Because we affirm on those procedural grounds, we do not reach arguments regarding the substantive merits of the motion.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3115-24